UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | **No. 06 CR 486-1** |
| | ) | |
| v. | ) | Honorable Joan B. Gottschall |
| | ) | Judge Presiding |
| JAMES H. LEVIN, | ) | |
| Defendant. | ) | |

**DEFENDANT JAMES H. LEVIN'S SENTENCING
MEMORANDUM BASED ON §3553(a)**

James H. Levin, defendant herein, by and through his attorneys, Steven Shobat and Edward

M. Shishem, respectfully requests the Court to consider the following matters pursuant to 18

U.S.C.§3553(a) in support of his sentencing hearing, which is set for Wednesday, May 2, 2007 at

9:00 a.m. Defendant received the preliminary presentence investigation report on April 9, 2007, and

has no objections to the factual material contained therein nor to the proposed advisory sentencing

guideline range.

1.      **The Court Has Sentencing Discretion to Select the Appropriate Sentence.**

Following the United States Supreme Court's decision in *United States v. Booker*, 543 U.S.

220 (2005), "the federal Sentencing Guidelines [are] effectively advisory." Notwithstanding the

advisory nature of the sentencing guidelines, the Seventh Circuit has held post-*Booker* that because

sentencing courts are still required to consult with and take advice from the Sentencing Guidelines,

the sentencing determination must begin with an accurate calculation of the applicable Guidelines.

> [T]he provision of the Sentencing Reform Act that mandates
> resentencing when the challenged sentence resulted from an
> "'incorrect application of the sentencing guidelines,'"18 U.S.C.
> §3742(f)(1), remains in effect after *Booker*. *United States v. Scott*,
> 405 F.3d 615, 617 (7th Cir. 2005). "An incorrect application of the
> guidelines [therefore] requires resentencing under the post-*Booker*
> sentencing regime." *Id.* [citations omitted].

*United States v. Baretz*, 411 F.3d 867, 873-74 (7th Cir. 2005); *United States v. LaShay*, 417 F.3d 715, 719 (7th Cir. 2005).

The probation officer has calculated defendant Levin's advisory guideline level as Level 13, Criminal History Category I, yielding a sentencing guideline range of 12 to 18 months. The defendant provided substantial assistance to the government and it is expected that the government will move for a downward departure pursuant to U.S.S.G. §5K1.1 to a Level 8, and that the extent of the government's requested departure, if accepted by the Court, will result in a potential straight probation sentence (an advisory guideline range of 0 to 6 months, Zone A). Defendant has reviewed the advisory guideline calculations and has no objection to the adjusted offense level or the criminal history calculations.

Importantly, as the Seventh Circuit has made abundantly clear, the proposed advisory guideline range is not presumed to be the "correct" sentence to be imposed and it is error for a sentencing court to presume the advisory range is the appropriate sentence. *United States v. Demaree*, 459 F.3d 791, 794-95 (7th Cir. 2006). Instead, this Court's sentencing decision is committed to its sound discretion guided only by the parameters of the statutory maximum and minimum sentence, the factors enumerated in Section 3553 of Title 18 of the United States Code, and the directive to impose a sentence "sufficient but not greater than necessary" to comply with the purposes of sentencing set forth in Section 3553(a)(2). Because the plea agreement in this case is a Rule 11(c)(1)(C) agreement to an agreed sentencing range, we urge this Court to accept the defendant's plea agreement and to sentence defendant Levin within the agreed-upon range.

**2.** _____ **Section 3553(a)**

The sentencing purposes of Section 3553(a)(2) are (A) to reflect the seriousness of the

offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. See §3553(a)(2). Further, if they are applicable, a sentencing court must consider the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant (§3553(a)(1));
> (2) the kinds of sentences available (§3553(a)(3));
> (3) the sentencing guidelines and any pertinent policy statements issued by the Sentencing Commission (§3553(a)(4)-(5));
> (4) the need to avoid unwarranted sentencing disparities among similarly situated defendants (§3553(a)(6)); and
> (5) the need to provide restitution to any victim of the offense (§3553(a)(7)).

It is the sentencing court's decision to determine what weight to place on any one of these individual factors. *United States v. Johnson*, 471 F.3d 764, 766 (7th Cir. 2006)("The statute does not weight the factors. That is left to the sentencing judge, within the bounds of reason, which are wide.") Under these factors, defendant James Levin respectfully submits that he should be sentenced to a period of straight probation. Such a sentence is more than sufficient to accomplish each and every one of the objectives of Section 3553(a).

**3.**     **Factors Supporting a Probation Sentence**

     **(A)**     **Defendant's Criminal History and Personal Characteristics.**

Section 3553(a)(1) directs this Court to consider the history and characteristics of the defendant. Defendant Levin is 48 years old. He has achieved mature adulthood in this case with merely a single blemish which resulted in no criminal history points. Other than the charged conduct for which he stands convicted, he has led a law-abiding life. Even with respect to the charged conduct for which he is to be sentenced, he was not a motivating cause of the illegal activity, but

3

instead, as is explained in the next section, became involved in the offense opportunistically and has regretted his decision ever since.

Jim is a U.S. citizen, a devoted father, a loving and caring companion to his fiancé, a hard worker, and a good man. He has been employed his entire adult life. When he and his first wife divorced, Jim obtained joint custody over his three minor children and has been an active force in their lives. The children spend every other weekend with him and two days during the week. As his sister, brother and ex-wife all attest, Jim is a superb father who remains involved in his children's lives. As Jim's fiancé has noted, the hardest part of coming to grips with his offense conduct has been the disappointment and feeling of guilt he has as a result of setting a poor example for his children.

In the last two years, Jim lost both his father and his mother. His father suffered from Alzheimer's and Jim was the child who undertook the primary care for his father. Jim took his father to his doctor's appointments and cared for him. After his father died, Jim asked his mother, who was seriously ill herself, to reside with him and his fiancé. He became her primary caretaker over the last several years until her recent death. Both of Jim's siblings have attested to the selfless and important role that Jim played in taking care of their parents over the years.

Over the last decade to a decade and a half, Jim has participated annually in the Chicago Public Schools-Chicago Sun Times Charity Program for Christmas. As part of the program, Jim receives letters from underprivileged children (approximately 30 students a year) and buys presents for them from Santa. These are presents that the children personally request and are youngsters who would likely not receive any presents if Jim did not purchase them for the children. Jim also participates in the awarding of the presents by appearing as Santa every year on the last day before

Christmas break. For nearly the same length of time, Jim has participated as a volunteer on Thanksgiving to serve for the homeless at Holy Name Cathedral.

For nearly two decades Jim has given his time and his charity to the Chicago Club for the Deaf. He spearheaded their annual Christmas dinner and participated in drives to raise funds, clothes, food, and gifts for needy deaf children. Funds he helped raise made it possible for more than 400 deaf children and their families to receive needed assistance. Moreover, Jim's activities with the Chris Chelios Children's Charities have helped raise millions of dollars over the last twelve years for various charities.

In short, Jim is a good man who has done many good deeds over the course of his lifetime. His involvement in this offense was an aberration for which he is truly ashamed. Importantly, in light of this history, as well as other factors discussed below, he poses little risk to the public at large either by virtue of his past or by his conduct in this offense. This Court can protect the public and afford a sufficient deterrent by imposing a sentence of probation. The likelihood of recidivism at his age and in light of his personal characteristics and the nature of his offense is virtually nil.

**(B)    The Nature and Circumstances of the Offense Conduct.**

Section 3553(a)(1) also directs this Court to consider the nature and characteristics of the offense. In this section, it is important to note that the defendant's role in the illegal activities was essentially to allow his company to bid for and receive contracts from the Chicago Board of Education which, by virtue of his non-minority status, he would not have received had he not falsely certified and claimed that a proportion of the work was going to minority business enterprises. This conduct was wrongful and illegal and his efforts to obtain the contracts defeated the Chicago Board of Education's ability to regulate the award of such contracts to deserving businesses. But at all

times, Jim Levin fully intended to complete and did complete the fencing work and plowing work he contracted for – and did so at prevailing market rates. In addition to falsely certifying that minority contractors were doing a portion of the work, Levin also caused invoices to be submitted that did not accurately reflect the number of hours worked by individual plows and workers. But again, while false, these invoices did reflect work that was done by persons employed by Levin's company.

Moreover, the conduct for which the defendant is being sentenced occurred seven years ago. Since that time, the business which was involved in the offense has closed and Mr. Levin has filed for bankruptcy. Mr. Levin began cooperating in this case almost immediately after the offense (in May 2002) by providing truthful admissions of his own conduct and the conduct of others. He became proactive and maintained the secrecy of his involvement throughout these many years. Although the conduct was not public, Mr. Levin lived with the burden of knowing that he would be charged and his desire to confront his wrongdoing and get it behind him was put on hold for years. It has been a difficult burden to bear and his sentencing will at long last give him the ability to put this chapter in the background of his life and let him proceed onward. It only needs to be added that he has not spent these years in denial, avoidance, or obfuscation but instead in continuing on with his good deeds, and his efforts to make good the wrong that he did.

The mail fraud scheme to which the defendant has pleaded guilty encompasses both aspects of Mr. Levin's criminal conduct and is obviously a serious offense which warrants punishment and condemnation. But defendant Levin's participation in the offense, the completion of the work he contracted for, and the long delays in getting this case behind him, are reasons for this Court under Section 3553(a) to consider a probation sentence.

**(C)     Defendant's Extraordinary Remorse and His Cooperation.**

The defendant proffered and cooperated early and often with the government and stood ready, willing and able to provide truthful testimony and cooperation whenever it was needed or called upon (and may be needed yet). Not only did his cooperation involve testimony, but it also involved his participation in an undercover operation which caused others to be identified and prosecuted. His early cooperation significantly contributed to the eventual success of this prosecution and caused it to come to an earlier end than it might have otherwise had. It also led to the discovery of additional offenses as is summarized by the probation officer. (PSR, lines 316-325). His continued cooperation is part of his obligation under his plea agreement and we fully anticipate that the government will provide further information to the Court with respect to his efforts.

In addition to testifying in the grand jury with respect to this investigation, Mr. Levin also provided substantial assistance in a significant campaign finance prosecution conducted by the Public Integrity Unit in Main Justice. Mr. Levin was called upon to testify truthfully in that case in California and he did so. Certainly Mr. Levin's substantial assistance in testifying in California and his continued cooperation in this case is clear evidence of his extraordinary remorse and his earnest desire to rectify the wrongs that he has committed.

**(D)     The Restitution Obligation**

Section 3553(a)(7) also directs the sentencing court to consider the need to provide restitution to any victim of the offense. As part of his plea agreement in this case, the defendant has agreed to make restitution in the amount of $207,712. This is a significant financial obligation, and given his current financial status, payment of that obligation will be a significant burden and punishment on him.

7

**4.       The Reasonable Sentence Is a Sentence of Probation.**

*Booker* recognizes a sentencing court must "consult [the] Guidelines and take them into account when sentencing," but holds they are not mandatory. The one thing that remains clear is that *"Booker* is not an invitation to do business as usual." *Ranum*, 353 F. Supp.2d at 987.  It is respectfully suggested that a sentence of probation in this case, with the condition that defendant make monthly restitution payments throughout is manifestly sufficient punishment for Mr. Levin for this Court to accomplish all of the goals identified in Section 3553(a). Given his absence of criminal history, his important and continued cooperation, the nature and circumstances of the offense and his role in it, the felony conviction and significant monetary obligation already agreed to and likely to be imposed, and the significant good deeds he has accomplished in his life, a sentence of probation is appropriate.  Such a sentence would protect the public, provide a general deterrence, promote respect for the law, and would not deprecate the seriousness of the offense.  This Court should so find.

Respectfully submitted,

/s/  *Steven Shobat*
/s/  *Edward M. Shishem*

Steven Shobat
Edward M. Shishem
Attorneys for James H. Levin

Dated:  April 24, 2007

Steven Shobat
53 West Jackson Boulevard
Suite 1603
Chicago, IL 60604
(312) 353-2118
steven.shobat@sbcglobal.net